UNITED STATES BANKRUPTCY COURT

DISTRICT OF COLORADO



FILED
CLERK OF COURT

JUN 1 7 2026

U.S. BANKRUPTCY COURT
DISTRICT OF COLORADO

In re:

MICHAEL WILLIAM MUELLER

LISA JEANNINE MUELLER,

   Debtors.

Case No.: 26-12574-MER

Chapter 7

DAWN REITMAIR,

   Plaintiff,

v.

MICHAEL WILLIAM MUELLER and

LISA JEANNINE MUELLER,

   Defendants.

Adversary Proceeding No.: _____

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523(a)(2)(A)

Plaintiff, Dawn Reitmair, pro se, respectfully states as follows:

## 1. INTENT OF THIS ACTION

1.1 This is an adversary proceeding brought under 11 U.S.C. § 523(a)(2)(A) to determine that a debt owed to Plaintiff by Defendants is completely nondischargeable because it was obtained through false pretenses, false representations, and actual fraud.

## 2. JURISDICTION AND VENUE

2.1 This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2.2 This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as it concerns the determination of the dischargeability of a particular debt.

2.3 Venue is proper in this District pursuant to 28 U.S.C. § 1409(a) because the underlying bankruptcy case is pending in this District.

## 3. GENERAL ALLEGATIONS SUMMARY

3.1 Plaintiff loaned Defendants substantial funds under two notarized loan agreements to prevent foreclosure on their home and restore essential utilities.

3.2 Defendants made initial payments, provided motorcycle titles as a gesture of "security," and later negotiated a lower payment arrangement, all of which induced Plaintiff's continued reliance.

3.3 After benefiting from the loans, Defendants ceased communication, fabricated an attorney representation to halt collection efforts, and later filed bankruptcy while misrepresenting and concealing the true nature of the debts.

3.4 Plaintiff relied on Defendants' repeated assurances, representations, and conduct, and suffered financial harm when Defendants refused to repay the remaining balance.

3.5 The debt was obtained through false pretenses, false representations, and actual fraud, making it nondischargeable under 11 U.S.C. § 523(a)(2)(A).

## 4. THE PARTIES

4.1 Plaintiff, Dawn Reitmair, resides at 9508 Lou Dr, Northglenn, CO 80260. Plaintiff is a single mother of five children, including two sets of twins.

4.2 Defendants, Michael William Mueller and Lisa Jeannine Mueller, are the debtors in the underlying Chapter 7 bankruptcy case. Their home service address listed on their petition is 265 Willowick Cir, Highlands Ranch, CO 80129.

## 5. THE NOTARIZED LOANS AND PAYMENT HISTORY

5.1 Plaintiff and Defendants executed two (2) separate, written, and notarized loan agreements:

a. LOAN A: Executed on December 17, 2024, in the principal amount of $21,825.24 to fund three mortgage payments to prevent foreclosure and save Defendants' home. (Exhibit A).

b. LOAN B: Executed on March 27, 2025, in the principal amount of $7,000.00 to restore disconnected electricity services for Defendants and their son. (Exhibit B).

5.2 Plaintiff would never have advanced the money for Loan B if the repayment process for Loan A had not been moving along smoothly at that time.

5.3 To advance these crucial funds to the Defendants, Plaintiff was forced to take out personal loans herself, incurring severe debt liabilities. (Exhibit C).

5.4 Defendants initially made regular payments under both of the original signed documents, fully acknowledging the validity of the debts.

## 6. THE LOWER PAYMENT AGREEMENT

6.1 Because Defendants claimed they were struggling under the original combined totals, the parties verbally negotiated a lower, consolidated amount that Defendants could actually afford each month.

6.2 Defendants fully accepted and verified this modified oral setup by performing and immediately making periodic lower payments under this updated structure. (Exhibit D).

6.3 The final payment received by Plaintiff under this schedule was on January 16, 2026. Defendants went completely silent and missed the next payment due on January 23, 2026. (Exhibit H).

## 7. FALSE PRETENSES AND INDUCEMENT OF TRUST

7.1 On December 17, 2024, to induce Plaintiff's trust and build a false pretense of financial security, Defendants delivered to Plaintiff the original physical title to one Harley motorcycle and a photocopy of a title to a second Harley motorcycle as a gesture of "good faith." (Exhibit F).

7.2 These titles were never formally recorded as perfected security interests and were used by Defendants solely as an equitable trick to gain Plaintiff's trust and induce her reliance.

7.3 Defendants fully benefited from the loans by saving their home from foreclosure and restoring their utilities.

## 8. DECEPTIVE ATTORNEY SCHEME AND MISREPRESENTATIONS

8.1 On January 24, 2026, after completely cutting off communication following their January 23rd missed payment, Defendants instructed Plaintiff to stop collection efforts and contact "their attorney." Defendants sent Plaintiff a text screenshot of purported attorney contact details. (Exhibit E).

8.2 Plaintiff immediately called the specified attorney's office and left multiple messages, receiving zero return phone calls.

8.3 When Plaintiff finally reached the front desk, the receptionist explicitly informed her that Defendants had not retained the attorney, no retainer fee had been paid, and no bankruptcy petition had been drafted or filed.

8.4 Defendants intentionally used the false implication of immediate legal representation and impending bankruptcy to freeze Plaintiff's collection options while keeping themselves in control of the cash. Defendants did not actually file for bankruptcy protection until three months later, on April 16, 2026.

## 9. BAD-FAITH OMISSIONS AND MISREPRESENTATIONS IN BANKRUPTCY FILINGS

9.1 In their official bankruptcy schedules, Defendants intentionally hid the truth from the court. They listed only one of the two loans.

9.2 The single loan they did list was reported at full value, with zero payments shown, and was intentionally mischaracterized as a predatory "payday loan" to bias the trustee.

9.3 Defendants also failed to list Plaintiff as their professional accountant on their bankruptcy statements, despite Plaintiff serving as their business accountant for nearly two years.

## 10. DEMAND FOR FULL PAYMENT AND REFUSAL

10.1 The original notarized loan agreements explicitly state that the Plaintiff has the absolute right to collect the full outstanding balance on the loans at any time.

10.2 Plaintiff exercised her contractual acceleration rights and sent an official written Demand Email on September 25, 2025, for immediate payment of the full remaining balance. (Exhibit G).

10.3 In response to Plaintiff's September 25, 2025 demand for full payment, Defendants stated they could not pay the full amount and made no effort to comply with the demand. They continued making the reduced payments for a few months and then stopped entirely after January 16, 2026, leaving an unpaid principal balance of $9,324.22.

10.4 Plaintiff relied in good faith on Defendants' representations, promises, and gestures of trust. Plaintiff would never have advanced her own money had she known Defendants' true financial distress or their intent to dodge repayment.

10.5 As a direct and proximate result of Defendants' false pretenses, false representations, and actual fraud, Plaintiff has been damaged in the total unpaid balance amount of $9,324.22 as of the date of the bankruptcy filing.

10.6 Plaintiff further attaches an alternative interest recalculation optimized at a 12% rate as Exhibit I, reserving the right to seek all allowable pre-judgment interest, post-judgment interest, and court costs. Plaintiff explicitly reserves the right to supplement this action with an updated accounting spreadsheet at the time of the trial hearing.

## 11. CAUSE OF ACTION — NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A)

## 12. FALSE REPRESENTATIONS AND FALSE PRETENSES

12.1 Defendants made multiple false representations to Plaintiff, including:

a. Representing that they were financially capable of repaying the loans;

b. Delivering motorcycle titles as a false gesture of "security" despite never intending to perfect or honor them;

c. Claiming they had retained an attorney and were preparing an imminent bankruptcy filing when no such representation existed;

d. Misreporting and concealing the true nature and number of the loans in their bankruptcy sworn schedules.

12.2 These statements and omissions created false pretenses designed to induce Plaintiff to extend credit and delay collection.

## 13. KNOWLEDGE OF FALSITY

13.1 Defendants knew their representations were false at the time they made them.

13.2 Defendants knew they were not financially capable of repayment, had not retained counsel, and had no intention of honoring the titles or the modified payment agreement.

13.3 Defendants' later bankruptcy filings—misreporting the loans and omitting Plaintiff as their accountant—further demonstrate their knowledge and intent to conceal the truth.

## 14. INTENT TO DECEIVE

14.1 Defendants' conduct demonstrates a deliberate scheme to obtain money through deception, including:

a. Providing titles solely to create a false sense of security;

b. Making initial payments to maintain the illusion of good faith;

c. Instructing Plaintiff to stop collection efforts based on a fabricated attorney contact;

d. Delaying bankruptcy for months while retaining the benefit of Plaintiff's funds.

14.2 Defendants' actions were calculated to induce reliance and prevent Plaintiff from taking timely action to protect her rights.

## 15. JUSTIFIABLE RELIANCE

15.1 Plaintiff justifiably relied on Defendants' representations, including their promises of repayment, their delivery of motorcycle titles, their initial payment performance, and their statements regarding legal representation.

15.2 Plaintiff would not have advanced Loan B or continued accepting reduced payments had she known Defendants' true financial condition or their intent to evade repayment.

15.3 Plaintiff's reliance was reasonable given the notarized loan documents, the ongoing payment history, and Defendants' repeated assurances.

## 16. RESULTING DAMAGES

16.1 As a direct and proximate result of Defendants' false pretenses, false representations, and actual fraud, Plaintiff suffered financial damages in the amount of $9,324.22.

16.2 Plaintiff also incurred additional financial harm by taking out personal loans to fund the amounts advanced to Defendants.

16.3 Plaintiff reserves the right to seek allowable pre-judgment interest, post-judgment interest, and court costs.

## 17. TIMELINESS OF THIS ACTION

17.1 This complaint is timely under Fed. R. Bankr. P. 4007(c).

## 18. RESERVATION OF RIGHT TO AMEND

18.1 Plaintiff reserves the right to amend this complaint as justice requires.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment determining that the total debt of $9,324.22 owed to Plaintiff by Defendants is completely nondischargeable under 11 U.S.C. § 523(a)(2)(A), award Plaintiff all allowable court costs, and grant such other relief as the Court deems just.

Dated: 6/15 2026

DAWN REITMAIR, Plaintiff Pro Se

9508 Lou Dr, Northglenn, CO 80260

Phone: 303-827-9272

Email: divinlygraphicsqb@gmail.com

OFFICIAL INDEX OF EXHIBITS

* Exhibit A — Notarized Loan A agreement (12/17/2024)

* Exhibit B — Notarized Loan B agreement (03/27/2025)

* Exhibit C — Bank records showing Plaintiff funded loans and transfers

* Exhibit D — Payment tracking history demonstrating immediate performance under modified lower payment amounts

* Exhibit E — Screenshot of attorney info and receptionist call log notes.  Plaintiff will present the physical titles as evidence at the trial hearing.  (1/24/2026)

* Exhibit F —Written declaration regarding the physical delivery of one original Harley motorcycle title and one photocopy title on December 17, 2024.  Plaintiff will present the physical titles as evidence at the trial hearing.

* Exhibit G — Formal demand email for full payment.  Plaintiff will present the physical titles as evidence at the trial hearing.  (September 25, 2025)

* Exhibit H —  Alternative 12% interest recalculation ledger sheet